IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs March 24, 2021

**JARED SCOTT AGUILAR v. STATE OF TENNESEE**

**Appeal from the Circuit Court for Montgomery County**
**No. 41100542      William R. Goodman III, Judge**

———————————

**No. M2019-01814-CCA-R3-ECN**

———————————

The Petitioner, Jared Scott Aguilar, appeals the Montgomery County Circuit Court's determination that his coram nobis petition, wherein he challenged his multiple child pornography convictions, failed to state a cognizable claim for relief. On appeal, the Petitioner argues that the coram nobis court erred by finding that he had not presented newly discovered evidence entitling him to relief, specifically, evidence that the search warrant affidavit was deficient due to the investigating officer's allegedly untrue statement therein that he discovered three child pornography files in the Petitioner's shared computer folder, that the detective who performed a forensic examination of the Petitioner's laptop allegedly committed perjury at trial by stating that he found the incriminating files in the Petitioner's shared folder, and that the investigating officer had undisclosed contact with the Petitioner's wife. Following our review, we affirm the denial of relief because the Petitioner is merely presenting "repackaged claims" that have been previously determined and which do not state a cognizable claim for relief in the coram nobis context.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

D. KELLY THOMAS, JR., J., delivered the opinion of the court, in which NORMA MCGEE OGLE and ROBERT H. MONTGOMERY, JR., JJ., joined.

Wayne Clemons, Clarksville, Tennessee (on appeal), and Jared Scott Aguilar, Tiptonville, Tennessee, Pro Se (at hearing), for the appellant, Jared Scott Aguilar.

Herbert H. Slatery III, Attorney General and Reporter; Sophia S. Lee, Senior Assistant Attorney General; John W. Carney, Jr., District Attorney General; and C. Daniel Brollier, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**
FACTUAL BACKGROUND

A Montgomery County Circuit Court grand jury indicted the Petitioner for one count of knowingly possessing one hundred or more images of child pornography, one count of knowingly possessing fifty or more images of child pornography, and four counts of knowingly possessing a single image of child pornography. See Tenn. Code Ann. § 39-17-1003. These images were discovered following a forensic examination of a laptop retrieved from the Petitioner's residence.

Prior to trial, the Petitioner filed a motion to suppress the evidence discovered as a result of the search warrant obtained by Montgomery County Sheriff's Office Investigator Mike Cereceres. Investigator Cereceres submitted a twenty-seven-page affidavit in support of his application for a warrant to search the Petitioner's residence. See State v. Aguilar, 437 S.W.3d 889, 899-900 (Tenn. Crim. App. 2013), perm. app. denied (Tenn. May 16, 2014). In that affidavit, Investigator Cereceres detailed his extensive training and experience in the investigation of internet crimes against children. Id. at 900. Investigator Cereceres also provided background information on the use of the internet to traffic in child pornography, as well as the common behaviors of the users and traffickers of child pornography. Id. Turning then to the specifics of this case, Investigator Cereceres stated in the affidavit as follows:

> On 1/9/11, at approximately 05:58 CST, your affiant was using an internet file sharing program and observed a particular internet file sharing user located in Clarksville, TN. Said file sharing user was observed to have the following IP address: 70.156.27.128. The user with IP address 70.156.27.128 was observed to be in possession of files that contained images of minors engaged in sexual activity, in violation of T.C.A. [§] 39-17-1003, Sexual Exploitation of Minor. The aforementioned files are more particularly described in Attachment C.

Id. The trial court denied the Petitioner's motion to suppress.

The Petitioner proceed to a jury trial in July 2012. At trial, Investigator Cereceres testified that on January 9, 2011, while using file sharing software, he "ended up making a download off of the [Petitioner's] computer . . . [and] obtaining three images of child pornography." See Aguilar, 437 S.W.3d at 893. Investigator Cereceres viewed the files and confirmed that they did, in fact, contain child pornography. Id. After Investigator Cereceres determined that the IP address of the computer was registered to the Petitioner, he obtained a warrant to search the Petitioner's residence and computer. Id. at 893-94. During the search of the Petitioner's residence, officers seized two laptop computers, and the Petitioner admitted ownership of one of the laptops. Id. at 894. Upon questioning, the Petitioner acknowledged that he had used file sharing software, though claiming he did so for other reasons besides child pornography. Id. The Petitioner also provided a written statement making various incriminating admissions, like attempting to delete child

pornography after "accidentally download[ing]" it through a program called FrostWire and searching FrostWire for pornography "using such key words as little boy slash girl." Id.

Dickson County Sheriff's Department Detective Scott Levasseur testified that Investigator Cereceres brought a laptop and other pieces of evidence to him to be examined. Aguilar, 437 S.W.3d at 895. According to Detective Levasseur, only the laptop contained relevant evidence upon further forensic examination. Id. Detective Levasseur testified that he discovered more than 160 images containing child pornography and six videos on the Petitioner's laptop under the user account "Jared." Id. at 896. Detective Levasseur explained that the name of the computer was "Jared and Brittany" and that it contained two user accounts, one for "Jared" and one for "Brittany." Id. According to Detective Levasseur, the "Jared" account had been used 2,521 times and the "Brittany" account had been used only 77 times, and no child pornography was located under the "Brittany" profile. Id. Detective Levasseur further testified that he found no evidence that any person other than the Petitioner had accessed the computer during the relevant periods. Id. at 897.

The jury convicted the Petitioner as charged. Thereafter, on August 30, 2012, the trial court entered judgments imposing an effective ten-year sentence to be served at 100%.

The Petitioner appealed, arguing that "the trial court erred by denying his motion to suppress evidence seized pursuant to a search warrant, that the evidence was insufficient to sustain two of the convictions, that the counts of the indictment are multiplicitous, and that the [ten]-year effective sentence is excessive." Aguilar, 437 S.W.3d at 893. Relative to the trial court's denial of the motion to suppress, the Petitioner first argued on appeal that "the affidavit showed that Investigator Cereceres performed an illegal, warrantless search of the [Petitioner's] computer prior to obtaining the warrant." Id. at 901. This court found this allegation to be without merit, concluding that the Petitioner had installed file sharing software and had thereby opened his computer to every other person using that same software and that as a result, the Petitioner had no expectation of privacy in the files viewed by Investigator Cereceres using that file sharing software. Id. (citing United States v. Ganoe, 538 F.3d 1117, 1127 (9th Cir. 2008)) (additional citations omitted).

The Petitioner further argued that "the trial court should have suppressed the evidence seized pursuant to the search warrant . . . because the affidavit in support of the warrant did not contain sufficient facts to establish probable cause to search the [Petitioner's] residence." Aguilar, 437 S.W.3d at 898-99. Specifically, the Petitioner claimed that Investigator Cereceres' affidavit failed to establish a nexus between the files observed by Investigator Cereceres and the Petitioner's residence. Id. at 902. After detailing the information provided by Investigator Cereceres in his affidavit, this court determined that the magistrate was provided "with more than enough information to determine that probable cause existed to believe that the [Petitioner] possessed child pornography on his computer and that evidence of that possession could be uncovered in a

- 3 -

search of the [Petitioner's] residence." Id. This court continued, "Because Investigator Cereceres' affidavit provided sufficient information from which the magistrate could determine that probable cause existed to grant the search warrant, the trial court did not err by denying the [Petitioner's] motion to suppress." Id.

Relative to the sufficiency of the evidence, the Petitioner raised four distinct bases challenging the sufficiency: (1) the State had not proven that the Petitioner had "possession" of files that had been deleted and were in unallocated space and inaccessible to him; (2) the State had not proven that one indistinguishable image depicted a minor engaged in sexual activity; (3) the State had not proven that the images were of real people (as opposed to manufactured images) under the age of eighteen; and (4) the State had not proven that the Petitioner possessed the requisite number of images to support his convictions against him because many of the files contained duplicates of other images already counted. Aguilar, 437 S.W.3d at 902-06. This court rejected the Petitioner's contentions, finding the evidence sufficient. After we affirmed, our supreme court denied permission to appeal.

Thereafter, on September 19, 2014, the Petitioner filed a petition for post-conviction relief, which was followed by the appointment of counsel and the filing of an amended petition and answer. Jared S. Aguilar v. State, No. M2015-00430-CCA-R3-PC, 2015 WL 9581558 (Tenn. Crim. App. Dec. 30, 2015), perm. app. denied (Tenn. Mar. 24, 2016). The post-conviction court held a hearing on February 12, 2015, and entered an order denying relief on March 2, 2015.

Relevant here, the Petitioner included within his ineffective assistance claim the ground that Detective Levasseur testified that he found items in the Petitioner's shared folder, and the Petitioner claimed that such testimony contradicted both Investigator Cereceres' testimony and Detective Levasseur's own report. Aguilar, 2015 WL 9581558, at *6. The Petitioner asserted that a defense expert witness could have said that there was nothing in the Petitioner's shared folder and that "this investigation [was] impossible because there's nothing in the share[d] folder." Id. The Petitioner admitted that Detective Levasseur contradicted himself, but the Petitioner noted that "there's nothing to contradict him directly." Id. Furthermore, the Petitioner stated that he wanted to present a theory of defense that his now-ex-wife was working with the detective "from day one" in order to get retribution against the Petitioner because he was cheating on her. Id. The Petitioner told trial counsel about this theory, but trial counsel refused to use such a defense. Id.

Trial counsel testified at the post-conviction hearing that she spoke with Detective Levasseur and met with Investigator Cereceres at her office for over two hours. Aguilar, 2015 WL 9581558, at *7. Investigator Cereceres showed trial counsel a copy of what they had found on the Petitioner's computer and "walked [trial counsel] through" the evidence from beginning to end. Id. In that meeting, trial counsel was able to see what was found

on the computer and how the files were stored and determine if she needed to hire an expert witness. Id. Trial counsel ultimately decided not to do such based on her conversations with Detective Levasseur, Investigator Cereceres, and another attorney, as well as after consulting with the Petitioner. Id.

The post-conviction court found that the Petitioner had failed to establish that he received ineffective assistance from trial counsel. Aguilar, 2015 WL 9581558, at *9. Specifically, "the post-conviction court found that 'all of [the issues about the search of the computer and other people accessing the computer] were adequately addressed by . . . counsel at the suppression hearing or during the course of the trial.'" Id.

The Petitioner again appealed to this court, asserting that

> trial counsel rendered ineffective assistance of counsel when she (1) decided not to obtain the services of an expert witness for the defense without consulting the Petitioner; and (2) ignored the Petitioner's specific requests that she cross-examine the State's expert witnesses "on areas such as the contradicting of computer expert reports vs. the expert's in-court testimony and whether [the Petitioner's] estranged wife had 'set him up.'"

Id. at *1. Ultimately, this court affirmed the denial of relief.

Relative to the Petitioner's second ineffective assistance allegation, we first noted that "the trial transcripts reflect[ed] that trial counsel did question Detective Levasseur about his own report on cross-examination." Aguilar, 2015 WL 9581558, at *11. We further held that the Petitioner had "failed to show that trial counsel was deficient for failing to cross-examine the State's witnesses about the theory that the Petitioner's ex-wife colluded with police in order to frame the Petitioner." Id. at *12. In so concluding, we observed,

> Trial counsel testified that, prior to trial, the Petitioner simply told her that his ex-wife and other people were living in the home and had access to the computer. Trial counsel did not hear the details of his theory that his ex-wife colluded with police until the post-conviction hearing. Nevertheless, Investigator Cereceres testified that he did not need to work with the Petitioner's ex-wife in order to conduct his investigation and that he did not recall ever speaking with the Petitioner's ex-wife. Moreover, during trial counsel's cross-examination, Detective Levasseur admitted that the Petitioner's ex-wife could have logged into the computer under the

- 5 -

Petitioner's name and that she could have known the Petitioner's passwords to access his email and banking account.

Id. The Tennessee Supreme Court denied permission to appeal.

The Petitioner filed a second pro se petition for post-conviction relief, alleging that post-conviction counsel was ineffective for failing to raise all of the claims at the hearing that the Petitioner had included in his original pro se post-conviction petition and that, therefore, his grounds for relief in his original petition were not resolved on the merits and that he did not receive a full and fair hearing. Jared S. Aguilar v. State, No. M2017-01763-CCA-R3-PC, 2018 WL 6181731, at *1 (Tenn. Crim. App. Nov. 27, 2018), perm. appeal denied (Tenn. Mar. 28, 2019). Specifically, the Petitioner asserted that "his post-conviction counsel failed to litigate at the hearing . . . several issues raised in [the] Petitioner's original petition for post-conviction relief, including, but not limited to, the erroneous admission at trial of evidence obtained through unlawful search and seizure." Id. According to the Petitioner, "his trial counsel was ineffective for failing to challenge the lawfulness of the search warrant and that the issue was not addressed on the merits in his direct appeal because this court found that the issue had been waived." Id. This court determined that "the Petitioner's claim regarding the ineffectiveness of trial counsel has been previously determined after a full and fair hearing of the issue on the merits" and that any claim regarding the validity of the search warrant was waived. Id. at *3.

The Petitioner then filed a petition for a writ of habeas corpus in the United States District Court for the Middle District of Tennessee. Jared Scott Aguilar v. Mike Parris, 2016 WL 5373532, No. 3:16-cv-00779 (M.D. Tenn. Sept. 26, 2016). Ultimately, the district court determined that the state court's determinations, in all regards, were reasonable and not contrary to law. Id. at *14-18.

The district court first addressed the Petitioner's unconstitutional search and seizure allegations, wherein the Petitioner argued that "the affidavit supporting the warrant to search and seize his computers contained insufficient facts to establish probable cause" and claimed that "it conflicted with the evidence established at trial in a way that indicate[d] the affiant misrepresented how he discovered the pornography on [the] Petitioner's computer, and that he actually discovered the pornography through some other—illegal—means." Aguilar, 2016 WL 5373532, at *10. In concluding that these issues lacked merit, the district court explained that regardless of whether Investigator Cereceres' assertion that he "used a file sharing program to discover that [the] Petitioner had child pornography on his computer that was accessible on a peer-to-peer file sharing network" was "unsupported by evidence at trial months later," such was "irrelevant to the state court's probable cause analysis at the suppression hearing, which was limited to the 'four corners' of the affidavit." Id. at *14 (citing United States v. Brown, 828 F.3d 375, 381 (6th Cir. 2016); State v. Alberts, 354 S.W.3d 320, 323 (Tenn. Crim. App. 2011)). The district court further

- 6 -

noted that the "Petitioner never asserted in state court that [the] affidavit used to obtain a search warrant contained knowingly false statements in violation of Franks v. Delaware, 438 U.S. 154 (1978), or that he was entitled to a Franks hearing to develop such a claim." Id. at n.5.

The district court also examined the Petitioner's claim "that his trial counsel was ineffective for failing to retain and present the testimony of a computer expert who would have been able to better explain the 'share[d] folder' mystery"—i.e., the "Petitioner's claim that [Investigator] Cereceres must have lied about how he found child pornography on [the Petitioner's] computer, because [the] Petitioner did not have anything in his FrostWire 'share[d] folder.'" Aguilar, 2016 WL 5373532, at *14. Rejecting this argument, the district court explained that trial counsel testified that she interviewed Investigator "Cereceres for hours about his investigation, as well as meeting with Detective Levasseur, and that after going through the evidence with them and discussing it with [the] Petitioner, she made the strategic decision that a computer expert would not 'offer any benefit.'" Id. at *16. The district court also observed that trial counsel stated that she did not recall any indication from the Petitioner he had disabled FrostWire sharing. Id.

Included within its analysis of this allegation of ineffective assistance, the district court also addressed the Petitioner's post-conviction testimony that the sharing feature was disabled so there was nothing publicly accessible on his computer as being contradictory to Investigator Cereceres' trial testimony that the Petitioner's computer must have had sharing enabled for the files Investigator Cereceres accessed to be shared. Aguilar, 2016 WL 5373532, at *16. The district court ultimately determined that it was not unreasonable for the state court to credit the testimony of trial counsel and the investigator over the Petitioner's. Id.

Finally, the district court examined the Petitioner's claim that there was insufficient evidence to prove that he was the person who downloaded the child pornography files, as opposed to his wife. Aguilar, 2016 WL 5373532, at *17-18. The district court first noted that the Petitioner did not include in his direct appeal any claim that there was insufficient evidence to establish that he was the party responsible for the presence of the images on his computer, and as such, the Petitioner was limited to his post-conviction claim that trial counsel was ineffective for failing to pursue a theory at trial that the Petitioner's "estranged wife had 'set him up.'" Id. at *17.

The district court initially remarked that this court had rejected the Petitioner's post-conviction claim in this regard and cited to a portion of that opinion, which we have detailed above. Aguilar, 2016 WL 5373532, at *17 (citing Aguilar, 2015 WL 9581558, at *12). In addition to citing to our opinion, the district court further observed,

- 7 -

[Trial] counsel also elicited testimony at trial from [Detective] Levasseur that the name of the computer in question was "Jared and Brittany," and that a user profile for Brittany, [the] Petitioner's then-wife, had been created and accessed the same day that some of the videos were downloaded. But [Detective] Levasseur also testified that contemporaneous to the download of child pornography files from FrostWire, while logged into the computer under the user profile "Jared," the user also: logged into an email account with the user name "Jared_A_1990"; logged into a messaging account with the name "fun soldier 01"; logged into an Ashley Madison account, also with username "fun soldier 01" and a photo of [the] Petitioner from [the] Petitioner's own picture folder on the computer; ran several searches on the "adult" section of Craig's List; searched Google for "jailbait girls"; logged in and conducted financial business at USAA.com; accessed [the] Petitioner's YouTube account; and accessed [the] Petitioner's Facebook account.

Id. In conclusion, the district court stated,

These undisputed facts constitute sufficient evidence for the jury to conclude that [the] Petitioner was the user who downloaded the child pornography, and [the] Petitioner has not demonstrated what more counsel could have done to rebut them, beyond forcing [Detective] Levasseur to acknowledge that it was possible that [the] Petitioner's wife knew the passwords to his accounts.

Id.

On April 18, 2019, the Petitioner filed a pro se petition for a writ of error coram nobis challenging these convictions, the subject of the instant appeal. In his petition, the Petitioner, citing Ganoe, 538 F.3d 1117, alleged that he had a reasonable expectation of privacy that was violated, noting that no files were discovered in the shared folder upon subsequent forensic examination, which indicated, in the Petitioner's opinion, that Investigator Cereceres went beyond the shared folder to find the images. The Petitioner then claimed that certain trial testimony was perjured, specifically, (1) Detective Levasseur's trial testimony that during the subsequent forensic examination of the Petitioner's laptop, he found the files in the shared folder referenced by Investigator Cereceres, which was contrary to the detective's own report; (2) Investigator Cereceres' trial testimony that the Petitioner's wife did not get on the Petitioner's computer; (3) Investigator Cereceres' trial testimony that he could not find any evidence that anyone else used the computer around the time of the downloads; and (4) Investigator Cereceres' statement in the search warrant affidavit that he found the three files in the Petitioner's shared folder. The Petitioner also described as "suspicious" that Investigator Cereceres

- 8 -

only took one laptop from the Petitioner's residence when three laptops were present inside the residence at the time the search warrant was executed.

Relative to the timeliness of the petition, the Petitioner indicated that the statute of limitations should be tolled because his post-conviction counsel failed to raise these or similar grounds in his post-conviction proceedings though the Petitioner had alleged them in his original pro se petition. In addition, the Petitioner asserted that he was without fault in failing to present these grounds earlier because post-conviction counsel incorrectly advised him that he had adopted the Petitioner's pro se post-conviction petition by reference and that all claims did not need to be repeated in order to be preserved.

The State filed a response, alleging that the coram nobis petition should be dismissed for failure to state a cognizable claim for relief because the Petitioner did not allege or otherwise bring to the court's attention any new evidence or new matters that had not already been litigated or could not have been litigated by the Petitioner. The Petitioner filed a response that his claims had not been litigated and that his "only mistake" was trusting his attorneys.

A hearing was held on August 8, 2019. The pro se Petitioner testified at the hearing, contending that newly discovered evidence only had "to be new to [the trial court]." He also insisted that his claims had not been previously raised.

The Petitioner averred that there was "no evidence of any crime being committed whatsoever in the affidavit." According to the Petitioner, Investigator Cereceres, in his affidavit, identified that he had obtained three images or files from the Petitioner's computer, but none of the images or files identified in the affidavit were found during a forensic examination of his computer.

When testifying about Detective Levasseur's alleged perjury and Investigator Cereceres' alleged communication or collusion with the Petitioner's ex-wife, the Petitioner stated that he was relying on the trial transcripts to prove those allegations. The Petitioner then detailed what post-conviction counsel failed to do at the original post-conviction proceeding.

The affidavit supporting the search warrant was introduced as an exhibit. In addition, the forensic examination report of the Petitioner's computer, as well as two letters from post-conviction counsel, were admitted.

On August 29, 2019, the coram nobis court entered an order denying the Petitioner relief. The coram nobis court concluded that the Petitioner failed to present any new evidence, unknown facts, or new matters that had not been previously presented to the court or that could have been presented to the court. The coram nobis court observed that

the Petitioner relied on evidence that was presented at trial or was known to the Petitioner at time of trial or at the time of the suppression hearing.  The coram nobis court found that the Petitioner had not established he was without fault in failing to present the evidence at the proper time.

The pro se Petitioner attempted to file a notice of appeal with the Montgomery County Circuit Court on September 16, 2019.  However, that notice was returned to him, along with an explanation that the current Tennessee Rule of Appellate Procedure required notice of appeal documents to be filed in the Appellate Court Clerk's Office, rather than the trial court.  Thereafter, the Petitioner's pro se notice of appeal document was file-stamped with the Appellate Court Clerk's Office on October 7, 2019.  The document indicated that the Petitioner delivered it to the appropriate prison officials for mailing on October 2, 2019.  This appeal followed.[1]

## ANALYSIS

On appeal, the Petitioner argues that the coram nobis court erred by denying his petition when he presented "sufficient evidence that the affidavits supporting his search warrant were fabricated, a witness committed perjury, and there was undisclosed contact between the investigative officer and [the Petitioner's] former spouse."  The Petitioner concludes that newly discovered evidence was sufficient to have resulted in a different outcome at trial and submits that he is entitled to relief.

The State first asks us to dismiss this appeal because the Petitioner's notice of appeal document was untimely.  The State mistakenly alleges that that Petitioner's notice of appeal document was filed on October 9, 2019, presumably relying on the "Initiating Document" document generated on October 9 by the Appellate Court Clerk's Office.  Despite the date of this document, the notice of appeal document clearly bears a file-stamp date from the Appellate Court Clerk's Office of October 7, 2019.  However, either filing date is untimely.

Nevertheless, in the case of a pro se appellant who is incarcerated, "filing shall be timely if the papers were delivered to the appropriate individual at the correctional facility within the time fixed for filing." Tenn. R. App. P. 20(g). Effective July 1, 2017, Tennessee Rule of Appellate Procedure 4(a) provides that "the notice of appeal required by Rule 3 shall be filed with the clerk of the appellate court within [thirty] days after the date of entry of the judgment appealed from." Tenn. R. App. P. 4(a). Previously, the notice of appeal was required to be filed with the trial court clerk. The rule contained a "[t]ransitional [p]rovision" providing a remedy if a party "incorrectly attempt[ed] to file a notice of appeal

---

[1] Though the Petitioner represented himself in the coram nobis court, the Petitioner, at his request, was appointed counsel on November 26, 2019, for the purposes of appeal.  Appointed counsel filed an appellate brief on the Petitioner's behalf.

with the trial court clerk" wherein the trial court clerk notified the party of the error, if the filing was timely, and gave the party an additional twenty days within which to file the notice of appeal with the Appellate Court Clerk's Office. The transitional provision expired on June 29, 2018. However, the rule also states that "in all criminal cases the 'notice of appeal' document is not jurisdictional and the timely filing of such document may be waived in the interest of justice." Tenn. R. App. P. 4(a).

The appellant bears the burden of establishing when the interest of justice mandates waiver of the timely filing of the notice of appeal. State v. Kevin Montrell Thompson, E2016-01565-CCA-R3-CD, 2017 WL 262701, at *2 (Tenn. Crim. App. Jan. 20, 2017). That said, the Petitioner, now represented by counsel, has not responded to the State's request to dismiss. See State v. Rockwell, 280 S.W.3d 212, 214 (Tenn. Crim. App. 2007) (encouraging litigants to file a motion seeking permission to waive the timely filing of a notice of appeal or motion to dismiss prior to assignment to the court for consideration). However, the notice of appeal was due on September 30, 2019, only two days prior to when the Petitioner, who was pro se at that time, delivered the document to the appropriate prison authorities for mailing on October 2, 2019. Moreover, the pro se Petitioner had already mistakenly attempted to timely file a notice of appeal with the Montgomery County Circuit Court, presumably in accordance with the previous version of Rule 4(a). Under these circumstances, we conclude that a waiver of the timeliness of the notice of appeal is warranted. See Charles L. Jones III v. State, No. M2019-01935-CCA-R3-HC, 2020 WL 4208425, at *1 (Tenn. Crim. App. July 22, 2020) (waiving the timely filing of the notice of appeal document under similar circumstances).

The State also asks us to dismiss the petition as untimely, the petition's being filed after the one-year statute of limitations had expired. A petition for writ of error coram nobis must be filed within one year of the date the judgment of the trial court becomes final. See Tenn. Code Ann. §§ 27-7-103, 40-26-105. The statute of limitations is calculated from the date the judgment of the trial court becomes final, either thirty days after its entry in the trial court if no post-trial motions are filed or upon entry of an order disposing of a timely, post-trial motion. Payne v. State, 493 S.W.3d 478, 484 (Tenn. 2016); State v. Mixon, 983 S.W.2d 661, 670 (Tenn. 1999). A petition for a writ of error coram nobis may be summarily dismissed if it fails to show on its face that it has been timely filed because the timely filing requirement in Code section 27-7-103 is an essential element of a coram nobis claim. Nunley v. State, 552 S.W.3d 800, 828 (Tenn. 2018). "[T]he statute of limitations set forth in Section 27-7-103 is not an affirmative defense that must be specifically raised by the State in error coram nobis cases; instead, the coram nobis petition must show on its face that it is timely filed." Id. The one-year limitations period may be tolled only when required by due process concerns. See Workman v. State, 41 S.W.3d 100, 103 (Tenn. 2001).

- 11 -

Here, the Petitioner's judgments were filed in the trial court on August 30, 2012. This court affirmed his judgments on December 18, 2013, and our supreme court denied permission to appeal on May 16, 2014. The Petitioner did not file his coram nobis petition until 2019, well past the one-year filing deadline. The record also indicates that the Petitioner was aware of the statute of limitations or anticipated the statute of limitations being raised given his argument in his petition addressing the one-year statute of limitations and that it should be tolled due to post-conviction counsel's failures. However, the coram nobis court did not dismiss the petition based upon its untimeliness, but instead provided the Petitioner with an evidentiary hearing.

Regardless, we agree with the State that the coram nobis court properly denied the Petitioner relief. A writ of error coram nobis is an extraordinary remedy available only under very narrow and limited circumstances. Mixon, 983 S.W.2d at 666. A writ of error coram nobis lies "for subsequently or newly discovered evidence relating to matters which were litigated at the trial if the judge determines that such evidence may have resulted in a different judgment, had it been presented at the trial." Tenn. Code Ann. § 40-26-105(b); see State v. Hart, 911 S.W.2d 371, 374 (Tenn. Crim. App. 1995). The writ is limited to "errors dehors the record and to matters that were not or could not have been litigated on the trial of the case, on a motion for a new trial, on appeal in the nature of a writ of error, on writ of error, or in a habeas corpus proceeding." Tenn. Code Ann. § 40-26-105(b). The purpose of a writ of error coram nobis is to bring to the court's attention a previously unknown fact that, had it been known, may have resulted in a different judgment. State v. Vasques, 221 S.W.3d 514, 526-27 (Tenn. 2007). "The evil that the coram nobis statute is aimed at remedying is a conviction based on materially incomplete or inaccurate information." Payne, 493 S.W.3d at 486. In addition, relief for error coram nobis is only available "[u]pon a showing by the defendant that the defendant was without fault in failing to present certain evidence at the proper time." Tenn. Code Ann. § 40-26-105(b). The decision to grant or deny the writ rests within the discretion of the coram nobis court. Teague v. State, 772 S.W.2d 915, 921 (Tenn. Crim. App. 1988).

The Petitioner's claims of newly discovered evidence are unconvincing. The Petitioner's challenges relate to alleged inconsistencies or deficiencies in various witnesses' trial testimony and the lack of probable cause in the search warrant affidavit. These do not amount to newly discovered evidence or unknown facts occurring after the Petitioner's trial had concluded. The Petitioner stated at the hearing that in regard to his claims of perjured testimony, he was relying on the trial transcripts. The coram nobis court correctly observed (1) that the Petitioner failed to present any new evidence, unknown facts, or new matters that had not been previously presented or that could have been presented and (2) that the Petitioner relied on evidence that was presented at trial or was known to the Petitioner at time of trial or at the time of the suppression hearing. We

likewise agree with the coram nobis court that the Petitioner has not established that he was without fault in failing to present the evidence at the proper time.

Moreover, the Petitioner's allegations in the coram nobis petition—that the search warrant affidavit was deficient due to Investigator Cereceres' allegedly untrue statement therein that he discovered three child pornography files in the Petitioner's shared folder, that Detective Levasseur allegedly committed perjury at trial by stating that he found the incriminating files in the Petitioner's shared folder contrary to his report, and that Investigator Cereceres had undisclosed contact with the Petitioner's wife—are merely "repackaged claims" the Petitioner has presented in this court and in his federal habeas corpus action. The Petitioner has tried but never succeeded in obtaining relief on the same issues he presents in this appeal. See Mack Transou v. State, No. W2014-00537-CCA-R3-ECN, 2014 WL 7015747, at *1-2 (Tenn. Crim. App. Dec. 12, 2014) (denying error coram nobis relief and holding that the Petitioner's "repackaged claims" had been previously determined). Accordingly, we conclude that the coram nobis court did not err in concluding that the Petitioner failed to state a cognizable claim for relief.

## CONCLUSION

In consideration of the foregoing and the record as a whole, the judgment of the coram nobis court is affirmed.

_____
D. KELLY THOMAS, JR., JUDGE